Good morning. May it please the court. I'm Mr. Fernando Altasil and I represent the appellant, Cherlyn Napulou, in this appeal. Counsel, let me ask you a question before we get started. Has your client now served the sentence? Yes, Your Honor. So the only issue before us is the validity of the current probation report so that she doesn't get back again? Yes, Your Honor. The balance of the term of supervised release, which exposes her to further incarceration, should the probation department file another motion to revoke her supervised release on the language, as we've indicated, that is rather broad and impermissible as per the same score. So we're talking about a potential third revocation? Absolutely. And how long has she been out since the last? She's been out approximately four months, Your Honor. Four months. How are things going? Very fine, Your Honor. I saw her at Safeway. She's working as an employee there. Does she still want to see her girlfriend? Your Honor, I haven't had a discussion with her about that. How much time does she have left if her probation is revoked again? She would have 32 months left. And how much time has she served total? Forty-four months, Your Honor. Forty-four months. On initial target offense that only had her incarcerated per the court's order for 10 months, Your Honor. So this is the panorama that we want to discuss to the court, essentially the unfairness in the final analysis of what the outcome may be for her if we allow this language to continue as part of a condition for supervised release. Is there any motion that can be made properly to terminate probation? There could be, Your Honor, but I think it has to go back to the same judge involved in this case. And the history of this case suggests that there is a lot of tension and friction with the probation department. And I may point out that the last revocation was predicated on the fact that the girlfriend brought some food to the halfway house. Well, it was based really on the nature of the relationship, which the judge and the probation department think is not healthy for her. I was at a disadvantage at the lower court, Your Honor, because this woman, Carla Cajal, was named repeatedly during the proceedings. I didn't have her file, and it appeared that the court was, as well as the probation department, was upset at this woman because as part of her defense, she brought forth a defense that she was a member of the Kingdom of Hawaii and that the court didn't have jurisdiction. And the sense that I got, Your Honor, was that everybody was very upset at this woman and vicariously had visited my client. And at some point, I felt that we should have been in family court because this, in essence, was not criminal in nature what developed, what transpired, and what caused the revocation. Again, she brought some food to the halfway house and accompanied the defendant. Whatever the specifics, it's clearly that the judge made it clear that she feels that the continuation of the relationship is not going to help accomplish the goals of sentencing. All right. And it's not just the three visits because you want to be able to terminate that provision. Your Honor, may I clarify? Provision 9 or whatever, the special provision that she can't see this woman. No. With all due respect, Your Honor, our request is essentially that that condition be modified to protect my client because the way that it's worded, it says that she not have. I know. You said that you don't want it to be a violation for your client to contact her. Exactly. But you do think that if the woman contacts your client, that shouldn't be a violation. Correct. That's not your client's position, really, unless she's changed. Her position is that she should be able to maintain this relationship with a woman. That is her significant other is her position. Correct. All right. So your client would like that position, that provision terminated, so that she's able to see the woman that she considers to be her life partner. Correct, Your Honor. However, she realizes that there is a condition in place. To my knowledge, she has had no contact with her since she's been out. Well, you just said you didn't really know what was going on in that relationship. No, since she has been out. Since she's been out. Four months. There's been no issues presented by probation or anyone else to indicate that there's been a violation. All we're seeking, Your Honor, is just some language which would protect the defendant to a degree because – Well, and your client's going to be back here again shortly because she has said that she considers this a relationship that she cares about and wants to continue. And if all you're going to ask for – and the same problem with sentencing. You know, your client wants to continue this relationship. And there is an issue about whether to keep getting sent back to prison because she wants to do that. Now, if all you want is to say that, well, she cannot contact her, but it's all right for the other woman to contact your client, we're not going to get very far. We're going to keep in court forever. And your client's going to keep going back to prison. Your Honor, with regard to the misdemeanor language on the other portion of the condition. How is that going to help you? Well, Your Honor, I think it's just too overbroad. It is too overbroad. And so what? I mean, are you trying to solve your client's problem or are you interested in making law on misdemeanors? Your problem's not misdemeanors. The problem is that she's having a relationship with a woman who is a felon. And that's part of the order that's getting her in trouble, not the fact that she can't associate with somebody with a misdemeanor. Well, Your Honor, I think, nevertheless, the condition as written is far too overbroad. And it smacks against the decisions of this same court in prior cases. So what do you want on this? We want for this case to be remanded, Your Honor, back to district court and for these conditions to be reworded. To say what? To say basically that she not have any contact with anyone having a felony conviction. And if the court believes that there should be a restriction, for example, on a person who has been convicted of a drug-related misdemeanor offense, then I think that would be rational, that would be reasonable, and that would further the purposes of 30- So this is an argument you should have been making for the court. We review for abuse of discretion of what the court did. You're just making an argument saying that the judge abused his discretion. We can't remake the terms here. You want us to do it over again. Where was the abuse of discretion of district court when it entered the order on supervised release? The abuse was that it overextended the rational basis of the conditions themselves. And, again, we would have no problem- I don't know if that's an abuse of discretion by the judge. The judge has to take into consideration all these factors you're telling us. That's correct. And, in fact, you're telling us factors that are beyond what the judge heard. And you want us to redo the deal. And, again, I'm trying to say, where was the district judge's abuse of discretion? Apparently you presented these arguments to the district judge before. If you didn't, you should have. Well, Your Honor, these conditions, as worded, are not- Well, the judge does not have unfeathered discretion in terms of articulating or ordering the conditions. So preventing seeing persons with misdemeanors or felons is not against any particular laws relative to supervised release. You're just saying that they're overbroad is what I get. I'm saying that they're overbroad and also that these restrictions affect on certain fundamental rights, including her right of association. All right. Now, there was a condition you complained about that prohibited her from having contact with the other woman, the- Carla Cajal. Yeah. Now, are you objecting to that condition? No, I'm not. I'm objecting to the fact that she should not be exposed to further incarceration if Carla Cajal seeks her out. Now, we know she wants to have a relationship. She won't be. There's an exception to that. If your client didn't ask for it, she says, this woman did it, I didn't have anything to do with it, she'll go back and they'll talk about it. She's not necessarily going to have that. I appreciate that, Your Honor, but the language of the condition itself doesn't state that. And it's written within the laws relative to supervised release. It very well- There's a special condition naming her, is there not? There is a condition that it reads, the conditions are basically that- What is that special condition, number nine or whatever it is, that has the name of the other lady in it? Well, this is a further condition. It says, and this is verbatim of the court's language, but in addition there is the order that she is not to have contact, telephonic, written, or personal with Carla Cajal, and that is part of the order. At that point, I said, well, Your Honor, that may be a problem because we have no control over Carla, so what if she on her own starts writing letters to my client? And then the answer to the court was, well, they are not to go to your client. So that's the problem that we're looking at. And coupled with the tension and friction that exists with the probation department, we believe that sooner or later this woman who seems to be a very persistent woman may seek out my client, even if my client, for whatever reason, does not want to see her, because my client does at this point apparently is doing very well, and if we have this kind of situation develop, my client has no protection. What did the client say when she asked for sentencing? What did she tell the judge? That she did not want to agree that she would not see this other woman, right? That's correct. And has that position changed? Your Honor, I think in the moment before the court, there was a certain degree of emotionalism. It's not emotionalism. She said this is her life partner. She doesn't want to, whatever conditions they have, she's going to see her life partner when she's able to. She told that to the psychologist, the psychiatrist. The psychologist said that this life partner may be the only support that will really help her and that she shouldn't be prohibited from seeing her. And you're saying the opposite. Has your client ever told you that she's changed her mind and doesn't want to have a continuing relationship with this woman? Well, I have advised her not to have any contact, and to the best of my knowledge, she has not had any contact. Well, you don't have any knowledge, do you? I don't have any knowledge of what is transpiring today. Well, see, obviously you didn't have it when she was in prison, any physical contact. That's correct. Can you argue your case however you'd like? I'm sorry. I believe that what this court in the past has ruled, beginning with the Soltero case to the Torino case, and most recently in the TM case and the Weber cases, is that there always has been a view of this court that whatever conditions are put into place by the courts, that they have to have a rational basis that comport with the goals of 3553, which basically speak to deterrence, public protection, and rehabilitation. With regard to the misdemeanor condition, we do not see any relationship and or furtherance of the goals of 3553. All right, so the two things you're asking for is that the misdemeanor provision be stricken so that it only says that she may not have contact with felons. Correct. And you want the other provision that says she can't have contact with her life partner to mean that it's okay for her partner to contact her, but it's not okay for her to contact her partner. No, Your Honor. We're saying that we want some protection that... Again, that this woman that she has a permanent relationship with won't contact her. Your Honor, we're saying that she not be penalized or revoked in the event that Carla Cajal... Contacts her. ...decides to write a letter. But she may go to prison if she contacts Carla Cajal. Correct. Because what if... This is the practical and perhaps... All right, I understand what you're asking for. Yeah, because the problem is that what if Carla Cajal writes a letter to my client? I think I understand that. Thank you. Good morning. May it please the Court. I'm Florence Nakakuni, Assistant U.S. Attorney for the United States. Are you opposing this request that she not be penalized if the other person contacts her? Your Honor, I believe that the district court's conditions of supervised release were reasonable. No, I'm not asking that. Do you construe those conditions of release to mean that if Carla Cajal contacts this person, this client, that she's going back to prison regardless of who initiates the contact? That's my understanding. Do you... Is that a problem for you? If it's modified so that if there's a contact by this other person that this client doesn't have any control over in terms of contact, that that doesn't result in a further incarceration? Your Honor, this was a request made to the district court by Mr. Kosio, and the district court did not go along with that request. I understand that. That's for the government's position. Your Honor, I think in this particular case that the district court's condition is appropriate because the district court knows this defendant very well. You know, the problem I have with that, and I don't doubt that one bit, but I can't tell anything about that from the record. I mean, it has to be based on the record for the district court, and all I see is that there's a prior relationship that devolved into violence. That's all I know. How can we sustain that on a 353 analysis based on a record where the district court just says, I know this person from another case and I'm not going to permit it? I mean, the district court may be perfectly right, but it's hard for me to review that. Well, Your Honor, if I could, there are things in the record. This particular defendant was sentenced by the district court back in 2004. The district court handled the first revocation, which was in November 2005, which was along the same lines. Refusal to abide by the conditions of supervised release, refusal to go to substance abuse counseling, refusal to go to anger management, committing a misdemeanor crime in state court and being sentenced for it, and lying to the probation officer. And that was back in 2005. Then in 2007, when she begins her – I'm sorry. And for that, the district court sentenced Ms. Napulu to 24 months in prison. And she comes out in November and promptly violates, again, contact with the felon, which she had also done for the first revocation, and not being truthful to the probation officer when asked about the contact. And then we met in November 2007, and again in January 2008, before the sentencing in March of 2008. And the reason for the continuances, Your Honors, was because the defense attorney requested a mental health exam, which was done, and the report was available to the court and the parties on March 24 when Ms. Napulu was sentenced. And at this sentencing hearing, the judge basically said her primary concern with this particular defendant was an overwhelming goal to make sure she was on the right road and on the path to rehabilitation. And I think the district court realized that in order to be rehabilitated and to be deterred from committing future crimes, that a defendant has to be honest and truthful. That these breaches of trust, which Ms. Napulu did again and again back in 2005 and again in 2007, were a big problem. And the court also knew the particular facts and circumstances of this particular defendant. But we don't. That's the problem. How can we evaluate whether the district court was right in that assessment if we don't know anything about this other person except that she's a felon, they met in prison, they're a couple apparently, and that she had a prior relationship that devolved into violence. And that's all we know. And counsel says he didn't have the record of this other person before him at the hearing to be able to meaningfully examine on that issue. I'm talking about reviewing the sentencing factors and how we were supposed to look at the record. You keep telling us and the district court says she's a problem. Fine. Where's that in the record? Your Honor, my understanding is, I do know that very early on, Mr. Cossio raised this question about, well, where is Ms. Carla Cajal? I don't know her. But my understanding was that, and my recollection is that, he did ask for access to certain records, and I assume those are made available. Not to us. Well, one thing that's in the record is a psychiatric mental health nurse practitioner who was co-director of the medical clinic which contracts to the federal pretrial and probation division. And she sent a letter about this other woman and said, Ms. Napaloo is before you for a revocation hearing. Her violation was associating with a felon who happens to be Ms. Napaloo's life partner. It is my understanding her partner is really the only support she has at this time. With this support, she began taking care of her health needs, looking for work, and had a more positive outlook for her immediate future. Without the support of her partner, she is isolated, dejected, and despairing. It seems sensible to me that in this case an exception to the rule may be more applicable and more beneficial to both Ms. Napaloo and her partner as well as to the judicial system. That we have on the record before us. Yes, Your Honor, and that letter, with respect to that particular letter, the district court's view was, well, but the nurse practitioner has no information on Carla Cajal. And she also didn't buy into the claim that Carla Cajal was the only one who provided support for Ms. Cajal. The district court specifically responded to that claim and said the probation officer was there available to assist. The staff at Mahoney Holly, the halfway house where Ms. Napaloo was when the infractions occurred leading to the second revocation, were ready to assist. But Ms. Napaloo's problem is she refuses to follow any rule. She refuses to accept responsibility. Well, she didn't refuse to follow any rule. The only rule that she didn't follow was staying away from this mental health worker that the court apparently sends people to. The only rule she didn't follow was staying away from this woman that they thought might be good for her. Well, then, Your Honor, what she should have done. I mean, you don't say she wouldn't follow any rule. Unlike the first time, she followed all the other rules. But she didn't, Your Honor, because a specific condition of supervised release was no contact, no regular contact. I said that's the one rule. One rule. Yes. Without any rule. Without permission, without first obtaining written permission from the probation office. And she failed to do that. Right. But now what she's saying, as I understand counsel's argument, is, look, we're willing to abide by the no contact provision, but we don't want to be punished if Ms. Kalau contacts her and she has no control over that woman. She doesn't want to be sent back to prison. She's willing to serve out the remainder of her time as a supervised release with no contact. What's wrong with that? But that's it. I can tell the court that the district court's view on that because the same argument was made to the district court. And I agree with the district court that this is the reason the district court didn't go along with that is because Ms. Napulu likes to see herself as a victim. She blames everybody else for her problems. And the judge simply did not want to go along with allowing a contact if Ms. Kalau initiated it. I understand what the district court did. But the problem is I think everybody's playing on a different, somehow on a different playing field than we are. All we have is comments saying everybody knows Ms. Kalau, but we don't. And all we can judge is from the record. The only thing the record says is it's a positive contact. I'm not saying the district court is necessarily wrong. I'm just saying it's hard for me to judge without a record. So the question is, based on this record, what's wrong? Why isn't that provision overly broad for an inadvertent contact? You've given me an explanation, but is there something in the record that would help me? I think the district court explained its position repeatedly in January 2008 and at the sentencing hearing in March 2008. But it is true, the record itself does not have anything more specific about Carla Kalau other than it is clear that the district court supervised Ms. Kalau The district court also supervised another woman, a convicted felon, who was also before the district court. And in that case, with respect to those two individuals, the district court told us that it allowed the contact between those two felons because they had come to her with the request that they be allowed contact because they were life partners. And the court noted on the record that that particular relationship devolved into violence. That is part of the record. And the district court could see and had impressions of, clear impressions of Ms. Kalau and was concerned for the well-being of Ms. Nipulu and did not want that relationship to be lost. I need to clear something up because you've said some things that have caused me some concern about my understanding of the case. From what you've just said, was there evidence before the district court, before she imposed Condition 12, that the defendant had no contact, telephonic, written, personal, with Carla Kalau, that the defendant said, I want to be able to contact Carla Kalau? Was that the record before the district judge? Yes, it was, Your Honor. In fact, on the 24th when we met for the ultimate sentencing, Ms. Kalau was defiant. And her position on the 24th was, I want to get sentenced. I don't want to hear this again. And so the judge was concerned because she had the mental health report prepared by Dr. Atlin and she was being told, okay, but there's no halfway house that will take her and treat her for drug treatment and also dispense medication, so let's get on with sentencing. And the district court said, well, I'm concerned here. I'm getting this feeling that Ms. Nipulu simply wants to be sentenced so she can go ahead and do whatever she's going to do anyway. But the specific question is, did Ms. Nipulu tell the district judge, I'm going to continue to see Carla Kalau, I don't care, or whatever terms, I'm going to see her no matter what you think about Carla Kalau? Yes, Your Honor. Okay, so go ahead. What the defendant told the district judge was, I understand that, Your Honor, but she has been a very big support, support for me in my life. I mean, I'm not going to stop it. I'm sorry, but I'm not. If she's going to give me that support and motivate me to get back out there and get my kids, I'm going to hold on to that. And I'm also going to hold on to my family and Ms. Gilmore. You just, I don't know, I don't feel like you guys understand. You know, I really feel that you guys don't. That is, I'm not going to give it up. Okay, now, if we go back and look at the record, are we going to be able to see not what Judge Gilmore might have seen outside of the hearing, but are we going to be able to see what Carla Kalau's criminal record was? In other words, if she was a drug dealer, here's a whole list of things, but is it in the record about the nature of Carla Kalau that the judge had on the record before when she made this Condition 12? Yes, Your Honor. In the supplemental excerpt of record, we included the judgment in Ms. Kalau's case. Was that before Judge Gilmore? Judge Gilmore sentenced Carla Kalau. I can't say that the judge had the actual document while we were looking at this case. If the judge indicates anywhere in the record, I'd have to go back and recheck. Did Judge Gilmore anywhere ever say, I know about Carla Kalau? Yes. Okay, now, final question. So you're telling me that if, as to Condition Number 12, if Carla Kalau, and the defendant has nothing to do with it, if Carla Kalau comes up and makes an affirmative contact, and the defendant runs away and she makes an affirmative contact, she's going to go back and there's going to be revocation of her supervised release, based upon the fact that Carla Kalau, not the defendant, initiates a contract and tries to make contract even if Carla Kalau doesn't want to. I mean, I'm not saying that's the fact, but would that happen? Under those facts, Your Honor, I don't think so, because the particular – well, I understand that the provision regarding Carla doesn't say regular contact. It out and out says no contact. However, the law recognizes that inadvertent contact, contact that maybe that's not wanted. Okay. Another question. What's your objection to his position? I mean, he says she wants – your opponent says, my client wants to abide by this, but I want protection in cases of inadvertent contact or contact initiated on purpose by Ms. Kalau. And you're saying now that's okay. So why are we here? Your Honor, they filed the appeal. Well, yeah. But you said earlier today, I thought, that that was a reasonable condition, that it was a blanket no contact, including inadvertent contact or further contact. I'm sorry, Your Honor. When I responded to you, Judge Thomas, I did not realize you were including the inadvertent contact because that's not what he said in the brief. No, he says if Carla Kalau initiates the contact or if it's an inadvertent contact, then he wants that excluded. He's not asking that his client be allowed to initiate contact. Well, I don't think that provision should be excluded, but in response to Judge Brunetti's question, what I'm saying is, should that happen, and a contact initiated by Carla Kalau, and assuming it's unwanted? Yeah. Well, it doesn't matter if it's wanted or not. Yes. Then under those circumstances, I would think that the probation officer would not recommend a revocation based on that. But what I would expect is Ms. Napulu being honest and admitting that that contact had occurred. He's not asking for that provision to be stricken. He's asking, as I understand it, to exclude Ms. Napulu. He just wants her to be sent back to prison if Ms. Kalau, whoever it is, is a willful person, contacts her. Maybe I'm wrong on this, but it doesn't seem like you guys are far apart on this. Well, it seems to me he's asking to be bulletproof, and he's talking about what if. We don't do what ifs, as I see it, because the what if would have all the circumstances involving the breach of any condition. So to get a what if, we would have to go back through all these conditions and say what if this happened, what if that happened, and then we'd have to send it back to the judge because she's going to do the same thing again. And we'd have to say, okay, now when you do this, put a what if in. Is that what you understand his argument is? Because I think you've explained that if there's an inadvertent contact, then it's going to have to go back to the system and have the system process it to see whether she's truthful or not. He's saying, I don't want to do that. So that means we'd have to put protection, bulletproof, if you will, for any proposed, alleged, possible violation. Yes, Your Honor. Okay. All right. Now, if you want a third view of this, I think what counsel is asking for is meaningless. It doesn't matter which way it comes out. What this woman wants is to be able to see a woman that she considers her life partner. And what do you say? Well, if her life partner contacts her, that's fine. But if she contacts her life partner, it's not fine. It isn't going to make any difference anyway. She's willing to go back to prison, as she did before, in order to have the opportunity to see a woman that she feels has been helpful. Now, the judge may not feel that way. The expert that the judge sent her to does. But what we're being asked to do here to modify these terms of probation are going to make no difference to anybody, whether we strike misdemeanor, which is totally irrelevant to what's going on, or whether we come up with this provision, which makes more sense legally, that she's not going to be sent back to prison simply because someone contacts her. If we made that change, it would not have anything to do with the underlying problem, which is that the judge decided that she should not be allowed to see the woman that she considers her life partner. But her lawyer is not concerned with that issue and is not asking us for that. So my view of this case, as opposed to my colleague's, is it's a total waste of time, because what's being appealed will do the client no good at all. All right. Let me ask you this. Let me ask you this. If we were dealing with a husband and wife here in the condition that would be plainly illegal, right, if they were married? I don't think the district court would have imposed such a condition. Well, no. I mean, that's not the question. I mean, you can't do that to a husband and wife, right? I would agree with that. And if there were a civil union, I know the bill is pending and Governor Lindel may sign it, but if these two had been joined in a civil union, the provision could not be enforced either, right? Probably not. Mr. Bonnie and Clyde. Thank you. Thank you.
judges: Reinhardt, Brunetti, Thomas